<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IVETTE RIOS,<br><br>      Plaintiff,<br><br>    v.<br><br>CITY OF PERTH AMBOY, NEW JERSEY, and WILLIAM PETRICK,<br><br>      Defendants, | Case No: 19-19336 (SDW) (ESK)<br><br>**OPINION**<br><br>July 31, 2020 |

**WIGENTON,** District Judge.

Before this Court are Defendants the City of Perth Amboy's ("City" or "Perth Amboy") and William Petrick's ("Petrick," collectively, "Defendants") Motion to Dismiss Plaintiff Ivette Rios' ("Rios," or "Plaintiff") Complaint. Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (D.E. 6.) Subject matter jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. Venue is proper pursuant to 28 U.S.C. § 1391(b). This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated below, Defendants' motion is **GRANTED** in part and **DENIED** in part.

  **I.**  **BACKGROUND AND PROCEDURAL HISTORY**[1]

Plaintiff is a Hispanic, Puerto Rican female who suffers from bariatric related disabilities, including sleep apnea, high blood pressure, diabetes, and anxiety. (D.E. 1 ¶ 14.) Defendant City of Perth Amboy hired Plaintiff as a Code Enforcement Trainee on August 16, 2017, and promoted her to Code Enforcement Officer approximately one year later. (*Id.* ¶¶ 15, 26.)

---

[1] For purposes of this Opinion, this Court assumes the facts alleged in the Complaint are true.

Defendant Petrick is the President of the City Council for Perth Amboy ("Council"). (*Id.* ¶ 13.) While on the Council, Petrick posted on Facebook: (1) "If American women are so outraged at Trump's use of naughty words, who in the hell bought 80 million copies of 50 Shades of Grey?"; (2) on January 14, 2018, agreement with President Trump's statement that some countries were "shitholes" while posting photos of Haiti and the Dominican Republic; and (3) a comment, on October 26, 2018, describing women as "sex objects." (*Id.* ¶¶ 17-19, 38.)

In 2018, Plaintiff considered undergoing bariatric surgery, which was covered under the City's employee health insurance plan. (*Id.* ¶ 20.) After learning this, Petrick, on July 9, 2018, discussed discontinuing such coverage with City employees. (*Id.* ¶ 21.) Around July 20, 2018, Plaintiff had the surgery, receiving full insurance coverage. (*Id.* ¶ 22.) On July 23, 2018, Petrick inquired about this, while emailing another City employee, "[t]his is the same sister [Plaintiff] who came here from Puerto Rico and slip[ped] right into a City job." (*Id.* ¶ 25.)

Subsequently, "Defendant" started spreading rumors about Plaintiff, accused her of insurance fraud, and released her confidential medical information. (*Id.* ¶ 24.)[2] This led to colleagues "invasively interrogat[ing]" her. (*Id.*) On August 21 and September 19, 2018, Plaintiff went to a property as part of her work, but both times, the property owner, because of comments Petrick made, "immediately became hostile" and threatened Plaintiff. (*Id.* ¶¶ 27, 33.) In early September 2018, Petrick proposed a resolution limiting the availability of bariatric surgery and retroactively reducing coverage for Plaintiff's surgery. (*Id.* ¶¶ 28-30, 35.)[3]

On December 18, 2018, Plaintiff's lawyers sent the City a letter of representation regarding Plaintiff's claims of discrimination ("Letter of Representation"). (*Id.* ¶ 46.) Soon after, her supervisor restricted who she could work with and another employee was instructed "not to assist"

---

[2] It is unclear who Plaintiff is referring to, though later allegations suggest Petrick was involved.
[3] This resolution apparently passed, though Plaintiff's surgery was not retroactively affected. (*See* D.E. 1 ¶¶ 35-36.)

2

her. (*Id*. ¶ 47.) On February 6, 2019, this supervisor told Plaintiff that "they're watching you." (*Id*. ¶ 50.) On February 12, 2019, she filed a charge of discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") against the City and Petrick. (*Id*. ¶¶ 52, 70, 88.) That same month, a City employee told Plaintiff that Petrick presented allegations against her, initiating an internal investigation, and that Petrick "possessed a 'lot of power'" so she "should 'stay on his good side.'" (*Id*. ¶ 54.) On March 26 and 28, 2019, respectively, Plaintiff reported that she was barred from working with a certain employee and that her radio was missing. (*Id*. ¶¶ 55-57.)

On April 9, 2019, Petrick proposed defunding Plaintiff's and her sister's positions to the Council, and did so again on May 6, 2019, while recommending a Council salary increase. (*Id*. ¶¶ 61, 63.) On May 29, 2019, he proposed additionally defunding two other Hispanic women's positions as a budget cutting measure ("Budget Amendment"). (*Id*. ¶ 64.)[4] On June 18, 2019, the City's attorney advised Petrick to recuse himself from voting on the Budget Amendment, given Plaintiff's EEOC claim. (*Id*. ¶¶ 68.) However, on September 9, 2019, the Council, including Petrick, approved the Budget Amendment, defunding the four positions. (*Id*. ¶¶ 74, 124.)

Plaintiff filed this action on October 25, 2019. (D.E. 1.) Defendants moved to dismiss on January 21, 2020. (D.E. 6.) Plaintiff failed to timely file her opposition on March 2, 2020, and requested a further extension, with the consent of Defendants, on March 6, 2020, which this Court granted. (D.E. 9, 10.) The parties then timely submitted their opposition and reply. (D.E. 11, 12.)

## II.    LEGAL STANDARD

A defendant may move to dismiss a complaint for failing to state a claim under Rule 12(b)(6). An adequate complaint must be "a short and plain statement of the claim showing that

---

[4] Defendant also allegedly "eliminated the Acting Department Head of Code Enforcement position held by a male employee," but reinstated only this position on June 24, 2019. (D.E. 1 ¶ 71.)

the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

In considering a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (external citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

### III. DISCUSSION

Plaintiff brings claims against both the City and Petrick individually. This Court will address her claims against the City first, before addressing her claims against Petrick.

#### A. Claims as to Defendant City of Perth Amboy

Plaintiff brings discrimination claims under (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 ("Title VII"), and 42 U.S.C. § 1983 ("§ 1983"); (2) retaliation claims under

4

Title VII, 42 U.S.C. § 2000e-3; (3) discrimination claims under the Americans with Disabilities Act, 42 U.S.C. § 12112(a) ("ADA"); and (4) discrimination and retaliation claims under the New Jersey Law Against Discrimination, N.J. Stat. Ann. 10:5-12 *et seq.* ("NJLAD").

### i.  Counts 1 and 7:  Discrimination Under Title VII and § 1983

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Section 1983 prohibits persons, "under color of any statute, ordinance, regulation, custom, or usage," to deprive another of "any rights privileges or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.[5]  The "analysis of employment discrimination claims under § 1983 mirrors the Title VII analysis."  *Ford v. Cty. of Hudson*, 729 F. App'x 188, 195 (3d Cir. 2018).  Thus, as the parties have, this Court will address Plaintiff's Title VII and § 1983 discrimination claims together.  (*See* D.E. 6-5 at 12; D.E. 11 at 8.)

Courts examining Title VII and § 1983 employment discrimination claims apply the *McDonnell Douglas* analysis.  Under this analysis, plaintiff bears the initial burden of establishing a *prima facie* case of discrimination.  The burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection."  *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003).  If the employer meets this burden, "plaintiff then must establish by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination."  *Id*. (internal citations omitted).

To establish a *prima facie* case, Plaintiff must show she (1) "belongs to a protected class; (2) []she was qualified for the position; (3) []she was subject to an adverse employment action

---

[5] Plaintiff's § 1983 claims appear based on the Fourteenth Amendment of the Constitution.  (*See* D.E. 1 ¶ 132.)

5

despite being qualified; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position." *Id.* "However, to survive a motion to dismiss, a plaintiff need not establish the elements of a *prima facie* case; a plaintiff merely must 'put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *Gladden v. Solis*, 490 F. App'x 411, 412 (3d Cir. 2012) (internal citations omitted).

Plaintiff alleges she was discriminated against based on her race (Hispanic), gender (female), and national origin (Puerto Rican). (*See* D.E. 1 ¶ 79.) Defendants concede that Plaintiff pleads that she belongs to protected classes and that she was subject to an adverse employment action (termination), but argue that she fails to plead (1) that she was qualified for her position and (2) circumstances raising an inference of discriminatory action. (D.E. 6-5 at 15.)

1. Qualified for Her Position

To make a *prima facie* case that she was qualified, Plaintiff "must point to evidence from which a factfinder could reasonably infer that [ ] plaintiff satisfied the [criteria] identified by the employer or that the employer did not actually rely upon the stated criteria." *Nunn v. NHS Human Servs., Inc.*, 110 F. Supp. 3d 554, 564 (E.D. Pa. 2015) (citations omitted, brackets in original).

Plaintiff sufficiently pleads she is qualified. She alleges that she started as a Code Enforcement Trainee on August 16, 2017, and was promoted one year later, suggesting adequate performance. (D.E. 1 ¶¶ 15, 26.) There is no other suggestion that Plaintiff inadequately performed her job. This raises a reasonable expectation that discovery will reveal the necessary evidence for this element. *See Makky v. Chertoff*, 541 F.3d 205, 215 (3d Cir. 2008) (noting in similar circumstances, "the issue of basic qualification . . . will ordinarily be a question of fact").

2. Circumstances Raising an Inference of Discriminatory Action

"To establish the fourth element, a plaintiff may either: (1) introduce evidence of comparators (i.e., similarly situated employees who (a) were not members of the same protected class and (b) were treated more favorably under similar circumstances); or (2) rely on circumstantial evidence that otherwise shows a causal nexus between his membership in a protected class and the adverse employment action." *Greene v. Virgin Islands Water & Power Auth.*, 557 F. App'x 189, 195 (3d Cir. 2014).

Plaintiff sufficiently pleads this element. She alleges that, leading up to the defunding of her position, Petrick, in 2018, made several offensive comments toward women and Hispanic people, and on July 23, 2018, specifically noted Plaintiff's Puerto Rican national origin, before stating that she "slip[ped] right into a City job." (*Id.* ¶¶ 17-19, 25, 38.)[6] In April 2019, Petrick allegedly proposed defunding this very job, and on May 29, 2019, proposed defunding another three positions, all held by Hispanic women. (*Id.* ¶¶ 61, 64.) This passed on September 9, 2019, while no other positions were proposed to be cut, or actually cut. (*Id.* ¶¶ 69, 74, 82-83.)[7] Notably, Petrick, who allegedly holds significant influence, participated in the Council's deliberations and vote, plausibly connecting his allegedly discriminatory conduct to the City's termination of these positions. *See Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 286 (3d Cir. 2001) (finding at summary judgment, "it is sufficient if those exhibiting discriminatory animus

---

[6] Petrick allegedly (1) wrote "If American women are so outraged at Trump's use of naughty words, who in the hell bought 80 million copies of 50 Shades of Grey?"; (2) on January 14, 2018, suggested that Haiti and the Dominican Republic were "shitholes"; and (3) on October 26, 2018, referred to women as "sex objects." (D.E. 1 ¶¶ 18-19, 38.) Defendants argue these comments cannot be the "proximate cause" of the Council's vote to defund Plaintiff's position. (D.E. 6-5 at 16-17.) As further discussed, however, considered with Plaintiff's other allegations, they lead to the reasonable expectation that discovery will reveal evidence linking Petrick's alleged discrimination with the Council's vote.

[7] Viewing Plaintiff's Complaint in the light most favorable to her, the fact that only Hispanic women's positions were cut leads to the inference that comparable positions, not held by Hispanic women, were neither proposed to be, nor were actually, cut. Plaintiff does allege that the Council planned to defund a male employee's position but then reinstated it, though this supervisory position does not appear to be facially comparable to Plaintiff's position. (D.E 1 ¶ 71.) Plaintiff additionally alleges that (1) Petrick recommended the Council's salary be increased, and (2) City employees believed cuts would "hinder" Plaintiff's department. (*Id.* ¶¶ 63, 65.) These also support a reasonable expectation that discovery will reveal evidence supporting Plaintiff's claims.

7

influenced or participated in the decision to terminate"); *see also* D.E. 1 ¶¶ 54, 59-65, 68, 124.[8] Plaintiff raises a reasonable expectation that discovery will reveal evidence that her protected statuses are causally linked to her termination. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 791 (3d Cir. 2016) (finding allegations that plaintiff was qualified but was not rehired when six other men, including two with less seniority, were rehired, sufficient); *see also Bair v. City of Atl. City*, 100 F. Supp. 2d 262, 268 (D.N.J. 2000) (finding "somewhat conclusory" allegations of discrimination, which the city knew of, but failed to remedy, adequately pled § 1983 claim).

### ii. Count 2: Retaliation under Title VII

Title VII makes it unlawful for "an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge . . ." 42 U.S.C. § 2000e-3(a). A claim of discriminatory retaliation has three elements: (1) plaintiff "engaged in conduct protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action." *Connelly*, 809 F.3d at 789. As above, Plaintiff need only "plead[] sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence" of these elements. *Id*.

Defendants do not dispute that Plaintiff's submission of the Letter of Representation on December 18, 2018 and filing of the Charge on February 12, 2019, constituted protected conduct. (D.E. 6 at 23.) They, however, challenge whether Plaintiff sufficiently alleges that she faced adverse employment action causally linked to her protected conduct.

---

[8] The cases Defendants cite, which find "stray" remarks by "decision-makers" are given little weight, are distinguishable as they were decided at summary judgment, after discovery. *See, e.g.*, *Johnson v. Fuentes*, 704 F. App'x 61 (3d Cir. 2017); *Yahaya v. Maxim Health Care Servs. Inc.*, Civ. No. 10-5557, 2012 WL 6203785 (D.N.J. Dec. 12, 2012).

A "plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006), *as amended* (Sept. 13, 2006) (citations omitted). "[T]emporal proximity" or "circumstantial evidence of a pattern of antagonism following the protected conduct" may be used to raise an inference that a causal link between the protected conduct and retaliatory action exists. *Kachmar v. SunGard Data Sys., Inc*., 109 F.3d 173, 177 (3d Cir. 1997) (internal quotation marks omitted).

First, this Court finds Plaintiff adequately pleads adverse action, given the City terminated her. Second, Plaintiff sufficiently pleads a causal link between her protected conduct and her termination. Though there were approximately ten months between the Letter of Representation in December 2018, the Charge in February 2019, and Plaintiff's termination in October 2019, "a gap of this magnitude is not conclusive and can be outweighed by a 'pattern of harassment' . . . in the intervening period." *E.E.O.C. v. Avecia, Inc*., 151 F. App'x 162, 164 (3d Cir. 2005). In fact, the length of this intervening period is less significant given Petrick allegedly proposed defunding Plaintiff's position to the Council just two months after the Charge. (D.E. 1 ¶¶ 52, 61.)[9] Additionally, during this intervening period, Defendants allegedly barred her from working with specific employees, tampered with her equipment, told her (through her supervisor) they were "watching" her, and launched an internal investigation into her. (*Id.* ¶¶ 47, 50-51, 54-55, 57, 72.) Plaintiff sufficiently alleges an intervening "pattern of antagonism" between her protected conduct

---

[9] Notably, Petrick's conduct toward Plaintiff was part of the Charge's allegations and, despite being advised of a clear conflict of interest, he voted to defund Plaintiff's position. (D.E. 1 ¶¶ 68, 70.) Defendants argue that Petrick's proposal was exclusively his action, not the City's, for which he is insulated from liability. (D.E. 6-5 at 26-27.) While Petrick is not individually liable under Title VII, at this stage, this Court views his conduct and proposal, which the Council ultimately adopted with his input and vote, as part of the alleged "pattern of antagonism" leading up to the elimination of her position by the City, and suggest discovery will lead to evidence of a causal link.

and her termination, such that a causal link reasonably will be discovered. *See Avecia, Inc.*, 151 F. App'x at 164 (at summary judgment, finding a *prima facie* case of retaliation where plaintiff suffered negative performance reviews, increased scrutiny, and tension with co-workers, among other things, in the year between her complaint and termination).

### iii. Count 3: Discrimination under the ADA

Plaintiff alleges that Defendants violated the ADA, which prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To make a *prima facie* case, Plaintiff must show "(1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination." *Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 580 (3d Cir.1998). As above, Plaintiff need only "raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.3d at 213.[10]

Defendants argue that Plaintiff does not plead an adverse employment decision. In an antidiscrimination action, such "action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," such as one that "alter[s] an employee's

---

[10] While the *Fowler* Court dealt with the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, it noted that "[t]he standards for determining whether a covered employer has violated [the Rehabilitation Act] have been coextensive with the standards for determining whether a covered employer has violated the ADA . . ." 578 F.3d at 208.

compensation, terms, conditions, or privileges of employment." *Stewart v. Cty. of Salem*, 274 F. Supp. 3d 254, 264 (D.N.J. 2017) (internal citations omitted).

Plaintiff alleges Defendants discriminated against her based on her disabilities by accusing her of fraudulent activity related to her surgery, releasing her confidential medical information, and spreading "false rumors," leading her colleagues to "invasively interrogate her"; she also alleges two instances in which in the course of her work, a property owner became "hostile" toward her. (D.E. 1 ¶¶ 24, 27, 33.)[11]

Through these allegations, Plaintiff appears to argue that Defendants' conduct created a more difficult work environment. (*See* D.E. 11 at 19-20.) Hence, this Court will be guided by the elements of an ADA hostile work environment or harassment claim. *See Clem v. Case Pork Roll Co.*, Civ. No. 15-6809, 2016 WL 3912021, at *5 (D.N.J. July 18, 2016) (noting adverse employment action may be shown "'by proving that [plaintiff] was subjected to a hostile work environment'" (quoting *Greer v. Mondelez Glob., Inc.*, 590 F. App'x 170, 173 (3d Cir. 2014))).[12] Such a claim requires Plaintiff show "(1) [she] is a qualified individual with a disability under the ADA; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and (5) that [defendant employer] knew or should have known of the harassment and failed to take prompt effective remedial action." *Walton*, 168 F.3d at 667. To determine whether "the

---

[11] Plaintiff notably does not allege that the defunding of her position is linked to discrimination based on her disabilities. (*See* D.E. 1 ¶¶ 97-99; D.E. 11 at 19-20.) Plaintiff argues that Petrick's attempts to reduce bariatric surgery coverage and retroactively apply such policy to Plaintiff's surgery discriminated against her, based on her disabilities. (D.E. 1 ¶¶ 28, 97-98.) These, however, are not adverse employment actions, as they did not actually affect Plaintiff.
[12] Neither party specifically argues a claim for hostile work environment, however, neither support their arguments under the general discrimination framework with analogous cases, let alone cases at the pleading stage. This Court also notes that though the Third Circuit declined to explicitly decide whether a hostile workplace cause of action exists under the ADA, *Walton v. Mental Health Ass'n. of Se. Pennsylvania*, 168 F.3d 661, 666-67 (3d Cir. 1999), subsequent decisions appear to assume it does. *See, e.g.*, *Ballard-Carter v. Vanguard Grp.*, 703 F. App'x 149, 151 (3d Cir. 2017).

harassment was sufficiently severe or pervasive," courts will consider "all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal citations and quotation marks omitted).

Plaintiff does not sufficiently allege adverse employment action. Initially, Plaintiff does not allege the nature of her employment changed at all—for example, there are no allegations that Defendants reassigned, failed to promote, docked her pay, or fired her, based on her disability. Additionally, the acts she argues make up her disability discrimination claim are stated vaguely or appear isolated.[13] Thus, Plaintiff fails to plausibly allege that she suffered adverse employment actions, based on her disability, that were "pervasive" or "severe" such that it altered the conditions of her employment or unreasonably interfered with her work performance. *See Clem*, 2016 WL 3912021, at *5-6 (associational discrimination case under ADA finding numerous comments about plaintiff's husband's health were not "severe" such that it "interfered with her work performance," and concluding that plaintiff failed to plead "that her workplace was permeated with 'discriminatory intimidation, ridicule[,] and insult'" (brackets in original)).[14]

### iv. Counts 4 and 5: Discrimination and Retaliation Claims under NJLAD

Like Title VII, the NJLAD makes it unlawful for an employer to discriminate "in compensation or in terms, conditions or privileges of employment" based on race, national origin,

---

[13] Plaintiff points to only two specific events in which discriminatory conduct, based on her disabilities, adversely affected her work—when a property owner, on August 21, and again on September 19, 2018, acted in a hostile manner due to Petrick's statements. (D.E. 1 ¶¶ 27, 33.) Plaintiff also provides little detail on the manner in which Defendants "spread false rumors" or exposed her confidential medical information, such that it affected her work environment, for example, giving no detail to how colleagues "invasively interrogated" her, and how often. (*Id.* ¶ 24.)

[14] Defendants also argue that Plaintiff fails to plead she is disabled within the meaning of the ADA. Though moot, this Court notes that Plaintiff adequately pleads disability. She alleges her bariatric related disabilities interfere with her ability to "car[e] for herself, perform[] manual tasks," "interfere with major bodily functions," and "substantially limit[] her ability to work." (D.E. 1 ¶¶ 95-96.) This is sufficient at this stage. *See Ruggiero v. Mount Nittany Med. Ctr.*, 736 F. App'x 35, 40 (3d Cir. 2018) (finding allegations that plaintiff's severe anxiety and eosinophilic esophagitis "limited certain life activities such as sleeping, eating, and engaging in social interaction" sufficient).

gender, or disability, N.J. Stat. Ann. §§ 10:5-12(a), 10:5-4.1, or to "take reprisals against any person because that person has opposed any practices or acts forbidden under this act." N.J. Stat. Ann. §§ 10:5-12(d). It applies the *McDonnell Douglas* burden shifting test and has similar *prima facie* elements. *See Andersen v. Exxon Co., U.S.A.*, 446 A.2d 486, 490 (N.J. 1982).

The parties acknowledge that Plaintiff's NJLAD claims "mirror" her Title VII, § 1983, and ADA claims, and do not offer substantively distinct arguments. (*See* D.E. 6-5 at 32-33; D.E. 11 at 21-24.) In turn, this Court applies its Title VII, § 1983, and ADA analysis to Plaintiff's NJLAD claims, and similarly finds her discrimination and retaliation claims, except as to her disability, sufficiently stated. *See Davis v. City of Newark*, 417 F. App'x 201, 202 n. 2 (3d Cir. 2011) (noting that New Jersey courts often look to Title VII law to resolve NJLAD claims); *see also Santiago v. City of Vineland*, 107 F. Supp. 2d 512, 547 (D.N.J. 2000) (comparing ADA and NJLAD elements).

### B. Claims as to Defendant Petrick

#### i. Counts 1-5: Individual Liability Under Title VII, ADA, and NJLAD

The Complaint is not clear as to whether Plaintiff intends to bring Counts 1-5 against Petrick individually.[15] To the extent Plaintiff brings Counts 1-3 against Petrick, they are dismissed, as Title VII and the ADA do not permit liability against individual defendants. *See Williams v. Pennsylvania Human Relations Comm'n*, 870 F.3d 294, 299 (3d Cir. 2017).

In contrast, the NJLAD "provides a cause of action against non-employer individuals" who "'aid, abet, incite, compel or coerce the doing of any of the acts forbidden' by the NJLAD." *Marino v. Westfield Bd. of Educ.*, Civ. No. 16-361, 2016 WL 2901706, at *8 (D.N.J. May 18, 2016) (quoting *Tarr v. Ciasulli*, 853 A.2d 921, 928 (N.J. 2004)). This Court, however, does not

---

[15] For each of these counts, Plaintiff only states "Defendant" in the singular violated the law. (*See, e.g.*, D.E. 1 ¶¶ 77, 87, 92, 101, 112.) Based on context, this Court assumes "Defendant" in the singular generally refers to the City, unless context makes clear "Defendant" refers to Petrick. (*See, e.g.*, *id.* ¶¶ 12-13 (stating "Defendant is the City" while "Defendant William Petrick is the Council President").

construe the Complaint to make an NJLAD claim against Petrick individually. Again, Plaintiff pleads a singular "Defendant" violated the NJLAD in Counts 4 and 5, apparently referring to the City. (*See* D.E. 1 ¶¶ 101, 106, 112, 116.)[16]

### i.  Count 6:  Individual Liability Under § 1983

Plaintiff does explicitly allege that Petrick violated § 1983. (*See* D.E. 1 ¶¶ 118-25.)[17] To establish a § 1983 claim for discrimination, "the complaint must allege facts that would establish that the plaintiff is '(1) a member of a protected class; (2) similarly situated to members of an unprotected class; and (3) treated differently from members of the unprotected class.'" *Colombo v. Bd. of Educ. for Clifton Sch. Dist.*, Civ. No. 11-785, 2017 WL 4882485, at *3 (D.N.J. Oct. 29, 2017) (citations omitted)); *see also Kasper v. Cty. of Bucks*, 514 F. App'x 210, 214 (3d Cir. 2013). To establish individual liability for a supervisor "there must be some affirmative conduct by the supervisor that played a role in the discrimination . . . [shown] either through allegations of personal direction or of actual knowledge and acquiescence, or through proof of direct discrimination [or harassment] by the supervisor." *Holley v. Port Auth. of New York & New Jersey*, Civ. No. 14-7534, 2017 WL 4082825, at *17 (D.N.J. Sept. 15, 2017) (citations and quotation marks omitted). Again, Plaintiff need only show that discovery plausibly "could reveal the existence of evidence in support of" her claim. *Heneghan v. Northampton Cmty. Coll.*, Civ. No. 09-04979, 2010 WL 2730638, at *7 (E.D. Pa. July 8, 2010).

---

[16] Under Counts 4 and 5, Plaintiff refers to "Defendant" then separately refers to Petrick, suggesting for the purposes of her NJLAD claims, "Defendant" is the City. (*See, e.g.*, D.E. 1 ¶ 104 (alleging "Defendant refused to initiate any steps to ameliorate Petrick's discriminatory practices"); *see also id.* ¶ 116 (alleging "he [Petrick] routinely introduced and persisted that Defendant amend its budget").) Additionally, Plaintiff neither argues Petrick "aided and abetted" violations of the NJLAD, nor references the NJLAD section allowing individual liability. *See* N.J.S.A. 10:5-12(e).

[17] As above, this Court construes Plaintiff's § 1983 claim as based on the Fourteenth Amendment. (*See* D.E. 1 ¶ 132.)

14

The analysis is largely the same as this Court's analysis on Plaintiff's claims as to the City, given Petrick's direct involvement in many of Plaintiff's allegations.[18] Plaintiff also alleges that the City knew of, but failed to prevent, Petrick's conduct. (D.E. 1 ¶ 124.) Plaintiff's allegations give rise to the expectation that discovery will lead to evidence of her claim against Petrick. *See Heneghan*, 2010 WL 2730638, at *7 (finding allegations supervisor knew female employee discriminated against male plaintiff by "making false allegations against him," "treating him in a hostile manner," and "treat[ing] him differently than females in the department," show that "it is plausible that discovery could reveal the existence of evidence in support of" plaintiff's claim); *Covey v. City of Philadelphia*, Civ. No. 06-3649, 2007 WL 789577, at *5 (E.D. Pa. Mar. 13, 2007) (finding allegations that supervisors "took disciplinary actions," including termination, "which were motivated by Plaintiff's gender" were sufficient).[19]

### IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part.  Plaintiff shall have thirty days to amend the Complaint as to the dismissed counts, except for Counts 1-3 as to Petrick, which are dismissed with prejudice.  An appropriate Order follows.

s/ *Susan D. Wigenton*_____
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:      Clerk
cc:        Edward S. Kiel, U.S.M.J.
           Parties

---

[18] In summary, Plaintiff alleges that Petrick made offensive statements about Hispanic people and women, and specifically noted Plaintiff's national origin when saying she "slip[ped]" into her job.  He then allegedly proposed and voted in a City resolution defunding that job, along with the jobs of three other Hispanic women. (D.E. 1 ¶¶ 17-19, 25, 38, 59-64, 69, 74, 82-83.)  Petrick's proposal did not include cutting the positions of similarly situated, non-Hispanic, non-female employees, as the Budget Amendment only cut Hispanic women's positions.

[19] To the extent Defendants argue that Petrick was not Plaintiff's "supervisor" and thus cannot be individually liable, such a finding would be inappropriate at this stage.  As Council president with the apparent ability to directly impact Plaintiff's employment and benefits and initiate investigations against her, Petrick plausibly had a degree of supervisory capacity over Plaintiff. (*See* D.E. 1 ¶¶ 15, 28, 54, 60-64.)